# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANTONIO JEFFERSON** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **MEC DEVELOPMENT, LLC,** <br><br> Defendant. | **CASE NO. 1:17-cv-01394** <br><br> **ORDER DENYING MOTION TO APPROVE SETTLEMENT** <br><br> (Doc. No. 25) |

This lawsuit is about an employer that allegedly violated federal and California employment and wage laws by, amongst other acts and omissions, failing to pay statutorily-required overtime compensation to its employees. The employer is Defendant MEC Development, LLC ("Defendant" or "MEC"), and the plaintiffs are three former employees of MEC: Antonio Jefferson, Wayne Lewis, and Gregory Brown.

Before the Court is the parties' joint motion to approve a settlement agreement of all of Plaintiffs' several claims. See Doc. No. 25-1 (hereinafter "Settlement Motion"). The Court will deny the Settlement Motion for the reasons explained below.

## I. Background

MEC is a North Dakota limited-liability company that provided services pertaining to unmanned aerial systems (e.g., drones) and surveillance and video/imagery solutions. Some of MEC's business operations were conducted in China Lake, California and Inyokern, California. At these locations, MEC employed "logisticians" who performed logistics support.

Plaintiffs are three former employees of MEC who worked as logisticians at MEC's China Lake and Inyokern locations. Plaintiffs were employed by MEC during the following time

periods: Jefferson from May 26, 2014, through September 8, 2015; Lewis from February 10, 2014, through September 8, 2015; and Brown from May 12, 2014, through September 8, 2015.

After leaving their employment at MEC, Plaintiffs filed suit against MEC in October 2017. See Doc. No. 1. Plaintiffs alleged that MEC violated multiple federal and California employment and wage laws affecting Plaintiffs and a class of other similarly situated logisticians. On that basis, Plaintiffs pleaded seven claims for relief against MEC.

Plaintiffs' first claim is (1) failure to pay overtime compensation as required by the federal Fair Labor Standards Act ("FLSA").[1] Plaintiffs' six other claims against MEC are based on California law: namely, (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to pay all wages due at termination; (6) engaging in unfair competition; and (7) failure to comply with California's wage statement laws, such as by failing to furnish Plaintiffs with accurate itemized written statements showing their total hours worked. See id.

Plaintiffs pleaded their FLSA claim on behalf of themselves and a class of similarly situated logisticians pursuant to § 216(b) of the FLSA, which allows a plaintiff to bring an FLSA claim "in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Similarly, Plaintiffs pleaded their California claims pursuant to Fed. R. Civ. P. 23 on behalf of themselves and a class of similarly situated logisticians.

After engaging in some discovery, Plaintiffs and Defendant filed their joint Settlement Motion, which is now before the Court. To date, Plaintiffs have not moved for class certification for any of their claims, and Plaintiffs indicate that they have abandoned their pursuit of class certification. See Doc. No. 25-1.

## II. Plaintiffs' and Defendant's Joint Settlement Motion

The parties assert that they have reached a settlement agreement which, if approved by the Court, will resolve all of Plaintiffs' claims. The parties argue that the settlement agreement should be approved by the Court because the settlement agreement is fair and reasonable.

---

[1] The FLSA is codified at 29 U.S.C. § 201, *et seq*.

2

In the settlement agreement, Defendant agrees to make the following four settlement payments to Plaintiffs, respectively: (1) $22,000 to Jefferson; (2) $24,000 to Lewis; (3) $21,000 to Brown; and (4) $61,344.45 to all Plaintiffs — to be paid directly to Plaintiffs' attorneys — representing the full and final settlement of all of Plaintiffs' attorneys' fees and costs. See Doc. No. 25-2 (copy of the proposed settlement agreement).

In consideration for the foregoing settlement payments, each Plaintiff agrees to the following release:

> [Plaintiff], for himself and on behalf of his heirs, family, agents, executors, predecessors-in-interest, successors-in-interest, administrators, attorneys, and assigns, does hereby release, acquit, and forever discharge Defendant, its agents, employees, owners, members, representatives, managers, insurers, shareholders, assigns, officers, directors, subsidiaries, affiliates, sister companies, parent companies, predecessors-in-interest, successors-in-interest, attorneys, Trustees, sureties, and divisions (collectively, "Releasees"), **from any and all claims, demands, actions, obligations, debts, damages, attorneys' fees, costs, judgments, liens, causes of action, and/or liabilities of any kind that he had, has, or may have against Releasees, from the beginning of time until the execution of this Agreement, including those arising out of or relating to the subject matter of the Lawsuit, the Claims, or [Plaintiff's] employment and/or affiliation with Defendant**, and he agrees not to file or initiate a lawsuit or bring any claims arising out of the events that formed the basis of the Claims.
>
> [Plaintiff] expressly waives and assumes the risk of any and all claims for damages related to the Claims which exist as of this date, but of which he does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect his decision to enter into this Agreement. [Plaintiff] further agrees that he has accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact related to the Claims, and fully assumes the risk that the facts or the law may be otherwise than he believes.
>
> . . . .
>
> In furtherance of Plaintiffs' intent to waive and release Defendant from any liability for the Claims, whether or not now known, against Defendant and all other Releasees, Plaintiffs also waive and release all rights and benefits conferred on them by Section 1542 of the Civil Code of the State of California, and the applicable and comparable laws of any other state. Plaintiffs understand that Section 1542 of the Civil Code of the State of California states as follows:
>
>> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.
>
> Notwithstanding Section 1542, Plaintiffs understand and expressly consent that this means that, if they later discover facts different from or in addition to those that they now know or believe to be true, that the waivers and releases of this

3

> Agreement shall be and remain in full force and effect notwithstanding such different or additional facts or Plaintiffs' later discovery of such facts even if such facts may have materially altered Plaintiffs' release and waiver of claims or this Agreement between Plaintiffs and Defendant. Plaintiffs knowingly and voluntarily waive the provision of Section 1542 and expressly acknowledge that this waiver is an essential and material term of this Agreement between Plaintiffs and Defendant, and that without such waiver, this Agreement would not have been entered into by Defendant.

Doc. No. 25-2 (emphasis in first paragraph added; original emphasis in third paragraph removed).

The parties assert that the settlement agreement applies only to the claims of the three Plaintiffs — not to any putative class members — because Plaintiffs have abandoned their pursuit of class certification.[2]

## III. Discussion

### A. Legal standard for settlement of FLSA claims

The FLSA was enacted to protect workers from substandard wages and oppressive working hours. See Barrentine v. Arkansas–Best Freight System, 450 U.S. 728, 739 (1981). Under the FLSA, an employee's right to a minimum wage and to overtime pay is nonwaivable. Id. at 740. Therefore, FLSA rights cannot be abridged or waived by contract — including a settlement agreement — because this would "nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." Id. (internal quotations omitted).

For these reasons, an FLSA claim may not be settled without approval of either the Secretary of Labor or a district court. See Seminiano v. Xyris Enter., Inc., 602 F. App'x 682, 683 (9th Cir. 2015) (citing Nall v. Mal–Motels, Inc., 723 F.3d 1304, 1306 (11th Cir. 2013)). The Ninth Circuit has not established a standard for district courts to follow when evaluating a settlement of an FLSA claim, but federal district courts in California frequently apply the standard established by the Eleventh Circuit in Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982). See, e.g., Guinn v. Sugar Transp. of Nw., Inc., No. 16-CV-325, 2018 WL 3435410, at *2 (E.D. Cal. July 13, 2018); Thompson v. Costco Wholesale Corp., No. 14-CV-2778, 2017 WL 697895, at *6 (S.D. Cal. Feb. 22, 2017).

---

[2] In the Settlement Motion, the parties explained that Plaintiffs abandoned their California class claims brought pursuant to Fed. R. Civ. P. 23. See Doc. No. 25-1 at 6-7, 12 n.1. By contrast, the parties made no such explanation with respect to the FLSA class claims brought pursuant to § 216(b) of the FLSA. However, the context of the Settlement Motion and the settlement agreement indicates that Plaintiffs have also abandoned their FLSA class claim.

4

Pursuant to the Eleventh Circuit's standard in Lynn's Food Stores, Inc., the plaintiff may settle and release his or her FLSA claim against the employer or putative employer if the settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355. To determine whether the settlement reflects a fair and reasonable resolution of a bona fide dispute, the district court should consider and balance several factors: (1) the plaintiff's range of possible recovery on the FLSA claim and the amount offered in settlement; (2) the strength of the FLSA claim; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the plaintiff and, if applicable, class members to the proposed settlement; (9) the possibility of fraud or collusion; and (10) the scope of the plaintiff's release. See Kerzich v. Cty. of Tuolumne, 335 F. Supp. 3d 1179 (E.D. Cal. 2018); Seguin v. Cty. of Tulare, No. 16-CV-1262, 2018 WL 1919823, at *3 (E.D. Cal. Apr. 24, 2018); Slezak v. City of Palo Alto, No. 16-CV-3224, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017); see also Lewis v. Vision Value, LLC, No. 11-CV-1055, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (recognizing that the factors used to analyze FLSA settlements are similar to the factors used to determine the fairness of class action settlements under Fed. R. Civ. P. 23). If the settlement reflects a fair and reasonable compromise over issues that are actually in dispute, then the district court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." Lynn's Food Stores, 679 F.2d at 1354.

**B.      Analysis of the proposed settlement agreement**

The Court cannot conclude that the parties' proposed settlement agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. The following explains why.

      1.      <u>The proposed settlement amount and the range of recovery</u>

The proposed settlement amount of the FLSA claim must be fair and reasonable. To determine whether the proposed settlement is fair and reasonable, the proposed settlement amount should be balanced against the strength of the plaintiff's FLSA claim and the reasonable range of recovery on the claim. See Kerzich, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018); Khanna v.

Inter-Con Sec. Sys., Inc., 09-CV-2214, 2012 WL 4465558, at *11 (E.D. Cal. Sept. 25, 2012); Lewis, 2012 WL 2930867, at *2 (finding the proposed settlement amounts fair and reasonable because they were "proportionate to the damages Plaintiffs could have obtained if they proceeded to trial").

Here, the proposed settlement amounts are $22,000 to Jefferson, $24,000 to Lewis, and $21,000 to Brown, respectively. The parties asserted that the maximum possible recovery if Plaintiffs prevailed on all of their claims is $39,442.62 for Jefferson, $50,851.58 for Lewis, and $39,236.36 for Brown, respectively. The parties also asserted that "if Defendant was successful on just . . . two of its several asserted defenses,"[3] then Plaintiffs recovery would be $6,763.70 for Jefferson, $7,749.66 for Lewis, and $5,164.82 for Brown, respectively.

The parties' assertions about Plaintiffs' range of recovery are problematic. First, the assertions are not supported by any evidence, meaningful explanation, or calculation — all of which the Court needs in order to determine the accuracy of the parties' asserted range of recovery and, in turn, the fairness and reasonableness of the proposed settlement amounts. See, e.g., Wagner v. Cty. of Inyo, No. 17-CV-969, 2018 WL 3203116, at *3 (E.D. Cal. June 28, 2018) (stating that "the court is not able to make the findings that are required in order to approve this proposed settlement agreement" of a FLSA claim because the parties failed to provide the court with "factual representations or significant analysis as to why this settlement agreement is a fair and reasonable resolution of a bona fide dispute, as required under the FLSA," and requiring the parties to submit supplemental declarations or briefs); Dunn v. Teachers Ins. & Annuity Ass'n of Am., No. 13-CV-5456, 2016 WL 153266, at *4–5 (N.D. Cal. Jan. 13, 2016) (taking issue with the parties' FLSA settlement motion that included exhibits with information about the plaintiffs' unpaid overtime, previous payments, and current payments because the exhibits were not dated, signed, or verified); Ambrosino v. Home Depot U.S.A, Inc., No. 11-CV-1319, 2014 WL 1671489, at *2 (S.D. Cal. Apr. 28, 2014) (noting that the parties' failure to "provide estimates regarding the number of overtime hours worked by each Plaintiff and information regarding the potential range

---

[3] The parties neither identify which two defenses they are referring to nor explain why the other defenses would not likely prevail.

of recovery for each Plaintiff [rendered] it impossible [] to determine whether the amounts to be paid to each Plaintiff . . . are fair and reasonable"); McKeen-Chaplin v. Franklin Am. Mortg. Co., No. 10-CV-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012) (stating that the court "cannot conclude that the settlement is a fair and reasonable resolution" because the parties' settlement motion was based on "conclusory assertions . . . not supported by any evidence or analysis" and did not include "estimates regarding the number of overtime hours worked by each Plaintiff and information regarding the potential range of recovery for each Plaintiff"); Khanna, 2012 WL 4465558, at *11 (stating that it was "difficult to determine the ultimate reasonableness of the settlement" because "counsel has provided no information about the potential range of recovery").

Without evidence, meaningful explanation, and calculations about Plaintiffs' reasonable range of recovery — including the factual and evidentiary basis for Plaintiffs' alleged unpaid overtime — as well as the proposed settlement amounts' departure from the maximum possible recovery, the Court cannot determine the fairness and reasonableness of the proposed settlement amounts. The Court will not rely on unsupported and conclusory assertions from the parties' counsel.

Second, the parties' unsupported assertions about Plaintiffs' range of recovery fail to distinguish and identify the range of recovery for each of the Plaintiffs' several claims, most importantly the FLSA claims. Instead, the parties' asserted range of recovery appears to aggregate or at least take into account the possible awards of the several claims brought by each Plaintiff — claims that include several California employment and wage claims in addition to the FLSA claims. This makes it impossible for the Court to isolate the range of recovery for just the FLSA claims and ascertain whether and to what extent the proposed settlement amounts provide compensation for the FLSA claims. See, e.g., K.H. v. Sec'y of Dep't of Homeland Sec., No. 15-CV-2740, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018) ("The Court cannot determine whether the settlement amount is fair or reasonable, however, until the parties provide an estimate of the Plaintiffs' range of recovery if they were to prevail on their FLSA claims.") (emphasis added).

Because of the foregoing problems, the Court cannot conclude that the parties' proposed settlement agreement is a fair and reasonable resolution.

2. <u>Liquidated damages</u>

The FLSA allows a plaintiff to recover double damages, awarding both the actual damages and an equivalent amount in liquidated damages. See 29 U.S.C. § 216(b); <u>Flores v. City of San Gabriel</u>, 824 F.3d 890, 895 (9th Cir. 2016) ("An employer who violates the FLSA's overtime provisions is liable in the amount of the employee's unpaid overtime compensation, in addition to an equal amount in liquidated damages."); <u>Haro v. City of Los Angeles</u>, 745 F.3d 1249, 1259 (9th Cir. 2014) ("Double damages are the norm; single damages the exception."). In order to escape paying some or all of the statutory liquidated damages, employers may seek to establish a good faith defense, but to do so they bear the burden of showing that they acted with both objective and subjective good faith in their violation of the FLSA. See 29 U.S.C. § 260; <u>Flores v. City of San Gabriel</u>, 824 F.3d 890, 895 (9th Cir. 2016); <u>Local 246 Util. Workers Union of Am. v. S. California Edison Co.</u>, 83 F.3d 292, 297 (9th Cir. 1996). In order to meet the burden of establishing the good faith defense, the employer must present evidence that it took "the steps necessary to ensure its practices complied with [the FLSA]" and "show that it actively endeavored to ensure such compliance." <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 910 (9th Cir. 2003). "This strongly suggests that, while some discounting of liquidated damages might be warranted in light of the settlement, completely excluding liquidated damages from the calculation of potential damages here is most likely inappropriate." <u>Kerzich</u>, 335 F. Supp. 3d at 1190-91.

Here, the parties did not satisfactorily address the issue of liquidated damages. The parties failed to clearly explain to what extent the proposed settlement amounts and reasonable range of recovery accounted for liquidated damages. Further, if the parties' proposed settlement amounts do not consist of liquidated damages or consist of less-than-full liquidated damages — which the Settlement Motion vaguely indicates is the case — then the parties also failed to clearly explain to what extent they reduced the liquidated damages and the factual and evidentiary basis for doing so. True, the parties stated in the Settlement Motion that "Defendant advanced several arguments calling into question the ability of Plaintiffs to make a full recovery of the above-referenced

damages." Doc. No. 25-1 at 6. And the parties referenced, but did not meaningfully discuss, a statute of limitation defense and another defense that "Defendant provided sworn interrogatory responses . . . disputing any FLSA violation." Id. But these cursory statements and references are too vague, and the parties did not provide any evidentiary support for them. Further, the parties did not clearly explain why and to what extent these defenses reduced the proposed settlement amounts from the maximum possible recovery.

Because of the foregoing problems, the Court cannot conclude that the parties' proposed settlement agreement is a fair and reasonable resolution.

### 3. Attorneys' fees and costs

The FLSA provides that the "court in such [FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This fee-shifting provision is "intended to allow plaintiffs to find competent counsel if legal action is required to compel the employer to pay what is owed, because if the plaintiffs' claims are meritorious, counsel will be able to obtain its fees from defendants regardless of the size of the claims, freeing them from a reliance on contingency fees to make pursuit of the litigation worthwhile." Kerzich, 335 F. Supp. 3d at 1188. Because settlements of FLSA claims require approval, payment of attorneys' fees from settlement proceeds is subject to review by the court. See Avila v. Los Angeles Police Dep't, 758 F.3d 1096, 1104-05 (9th Cir. 2014) (reviewing an award of attorneys' fees under the FLSA); see also Kerzich, 335 F. Supp. 3d at 1185-90.

Here, the parties' settlement agreement provides that Defendant will pay Plaintiffs a total of $60,000 in attorneys' fees and $1,344.45 in costs. The parties asserted that they "reached [these amounts] by utilizing a lodestar method of approximately 165 hours of attorney time at a blended rate of $365.00 per hour." Doc. No. 25-1 at 13. But the parties also asserted that these amounts were "negotiated" and "represent[] a substantial discount from the actual fees incurred by Plaintiffs' attorneys in their preparation and prosecution of this matter." Id.

The parties' proposal for attorneys' fees is problematic. Courts in the Ninth Circuit have used the lodestar methods to calculate the award of attorneys' fees in FLSA settlements. Kerzich,

1  335 F. Supp. 3d at 1185 ("Typically, attorneys' fees under the FLSA are determined using the lodestar method."). Under the lodestar method, the court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008). The fee applicant bears the burden of demonstrating that the billed hours were "reasonably expended" and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). It is also the fee applicant's burden to "submit evidence supporting the hours worked and rates claimed." Id. at 433.

Here, the parties asserted that Plaintiffs' counsel reasonably billed at least 165 hours on Plaintiffs' claims. However, the parties did not make any attempt at explaining why 165 hours is reasonable, other than to assert without evidentiary support that Plaintiffs' counsel actually billed more than 165 hours. Simply asserting that Plaintiffs' counsel worked more than 165 hours does not demonstrate that 165 hours is reasonable.

Additionally, the parties provided no evidentiary support for the proposed attorneys' fees and costs. The parties simply made assertions about Plaintiffs' attorneys' billable hours and rates without providing any evidentiary support, such as declarations, billing entries, or summaries of billing entries. This is insufficient. See McKeen-Chaplin, 2018 WL 3474472, at *3 n.3 ("[T]he Court does not have enough information — such as the experience of each attorney billing time to this case or the amount of time spent on specific tasks — to determine if that is indeed a reasonable lodestar."); Mitchell v. Cate, No. 08-CV-01196, 2015 WL 5920797, at *1 (E.D. Cal. Oct. 7, 2015) (providing the court with "contemporaneous time records that detail all work completed" so that the court could compute the lodestar); Yeager v. Bowlin, No. 08-CV-102, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010) ("Under the lodestar method, the fee applicant must provide sufficient detail of its billing such that the court can evaluate what lawyers were doing and the reasonableness of the number of hours spent on those tasks."); see also Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000) ("Plaintiff's counsel is not required to record in great detail how each minute of his time was

1  expended. But at least counsel should identify the general subject matter of his time
2  expenditures.").

3  Additionally, although the parties asserted that two of Plaintiffs' attorneys have,
4  respectively, 21 years and over 10 years of experience, the parties provided no meaningful
5  explanation for why a "blended" rate of $365 per hour is reasonable here, other than to cite an
6  order from the Fresno Division of this Court — In re Taco Bell Wage & Hour Actions, 222 F.
7  Supp. 3d 813, 840 (E.D. Cal. 2016) — that states that the Fresno Division has found the following
8  billable rates to be reasonable: $350 to $400 per hour for attorneys with twenty or more years of
9  experience; and $250 to $350 per hour for attorneys with less than fifteen years of experience.
10 Simply asserting that the parties' requested rate falls within the range of rates previously approved
11 by the Court for comparable attorneys in previous cases does not establish that the requested rate
12 is reasonable, although that is a considerable factor.

13 Additionally, the parties provided no detailed explanation or calculation for how they
14 "blended" the Plaintiffs' attorneys' rates to reach $365 per hour. Additionally, the parties
15 provided no identification or discussion about the number of hours each of Plaintiffs' multiple
16 attorneys — the experience of whom varies — contributed to the total 165 hours. In sum, the
17 parties have failed to meet their burden. See Camacho, 523 F.3d at 979 (stating that the fee
18 claimant bears the burden of producing sufficient evidence to show that its requested hourly rates
19 are reasonable); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002) ("Selection of
20 the benchmark or any other rate must be supported by findings that take into account all of the
21 circumstances of the case.").

22 Because of the foregoing problems, the Court cannot conclude that the parties' proposed
23 settlement agreement is a fair and reasonable resolution.

24    4.    Scope of release

25 Courts review the scope of any release provision in a FLSA settlement to ensure that the
26 claimants are not pressured into forfeiting claims or waiving rights unrelated to the litigation. Selk
27 v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1178 (S.D. Cal. 2016). "The concern
28 is that an expansive release of claims would effectively allow employers to use employee wages

— wages that are guaranteed by statute — as a bargaining chip to extract valuable concessions from employees." Id.; see also Seguin, 2018 WL 1919823, at *4; Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").

For this reason, a "FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." Slezak, 2017 WL 2688224, at *4. Courts are hesitant and may reject a proposed settlement agreement that attempts to release claims that are not directly related to the claims and allegations brought in the underlying lawsuit. See, e.g., Gonzalez v. CoreCivic of Tennessee, LLC, No. 16-CV-1891, 2018 WL 4388425, at *10 (E.D. Cal. Sept. 13, 2018); McKeen-Chaplin, 2012 WL 6629608, at *5.

Here, the plaintiffs' releases are too expansive because they release claims that are not directly related to the claims and allegations brought in this lawsuit. In the release provisions, Plaintiffs agree to release Defendant

> from **any and all claims, demands, actions, obligations, debts, damages, attorneys' fees, costs, judgments, liens, causes of action, and/or liabilities of any kind that he had, has, or may have against Releasees, from the beginning of time until the execution of this Agreement**, including those arising out of or relating to the subject matter of the Lawsuit, the Claims, or [Plaintiffs'] employment and/or affiliation with Defendant . . . .

Doc. No. 25-2 at § 9 (emphasis added). The expansiveness of the releases is obvious. The parties must know this, which is why they attempted to charitably characterize the releases as only "slightly broader in application than the scope of the claims raised in the litigation." Doc. No. 25-1 at 9. That characterization — i.e., "slightly broader" — is not accurate: the releases encompass far more than just the claims raised in this lawsuit; they encompass "any and all claims" that Plaintiffs may have against Defendant from the beginning of time until the execution of the settlement. This is unacceptable to the Court.

The parties argue without any legal support that the expansiveness of the releases is justified because (1) Plaintiffs are being compensated for their settled claims and (2) Plaintiffs reviewed and understand the settlement agreement. This argument utterly fails because even when

1 a release is appropriately tailored — as it must be — the FLSA plaintiff must be compensated and
2 agree to the settlement agreement. Therefore, the fact that Plaintiffs are being compensated and
3 reviewed and agreed to the proposed settlement agreement does not obviate the legal requirement
4 that the releases be appropriately tailored.

Because of the foregoing problems, the Court cannot conclude that the parties' proposed settlement agreement is a fair and reasonable resolution.

### 5. Strength of FLSA claims and defenses

A court should not approve a settlement agreement of a FLSA claim if there is not a bona fide dispute. Lynn's Food Stores, Inc., 679 F.2d at 1355. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." Kerzich, 335 F. Supp. 3d at 1184; Selk, 159 F. Supp. 3d at 1172. "A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the [FLSA] statute." Kerzich, 335 F. Supp. 3d at 1184. In order to determine whether there are legitimate questions about the existence and extent of the defendant's FLSA liability, the court should consider the strength of the plaintiff's FLSA claims and the defendant's defenses. Millan v. Cascade Water Servs., Inc., No. 12-CV-1821, 2016 WL 3077710, at *7 (E.D. Cal. May 31, 2016).

Here, the parties did not meaningfully discuss the strengths of Plaintiffs' FLSA claims. For example, the parties did not meaningfully discuss the evidence that supports Plaintiffs' FLSA claims. The parties also did not meaningfully discuss Defendant's defenses. For example, although the parties briefly noted that there was a potential statute of limitations defense, the parties did not discuss the facts of that defense and the evidence supporting it. Similarly, although the parties asserted that Defendant disputes that there were any FLSA violations, the parties did not discuss the facts of Defendant's position or the evidence that supports it.

Because of the foregoing problems, the Court cannot determine whether there are legitimate questions about the existence and extent of Defendant's FLSA liability. Consequently,
///

13

the Court cannot conclude that the parties' proposed settlement agreement is a fair and reasonable resolution of a bona fide dispute.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that the parties' Settlement Motion (Doc. No. 25) is DENIED without prejudice to the refiling of a subsequent settlement motion that cures the issues identified in this order.

IT IS SO ORDERED.

Dated: January 11, 2019

SENIOR DISTRICT JUDGE